## MARY KILPATRICK v. PENNA. R. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF CHESTER COUNTY.

Argued February 10, 1891—Decided March 9, 1891.
[To be reported.]

1. A passenger, who, without necessity, attempts to alight from a moving train, in the face of a warning from a fellow passenger not to do so, is guilty of contributory negligence, and cannot recover for an injury received in such attempt.
2. While not bound to obey such a warning, the person warned disregards it at his peril, from whatever source it comes. It is enough that his attention is drawn to his danger; it then becomes his duty to avoid it, and not to do so is negligence.
3. Wherefore, it is not error, in an action for an injury received in alighting from a train, to charge that, if the train was in motion and the plaintiff was informed of that fact by a fellow passenger, and warned not to alight, it was his duty to heed the warning.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 20 January Term 1891, Sup. Ct.; court below, No. 54 January Term 1890, C. P.

On December 21, 1889, Mary Kilpatrick brought trespass against the Pennsylvania Railroad Company, charging negligence whereby personal injuries were inflicted upon her. The defendant pleaded not guilty.

At the trial on May 22, 1890, the testimony for the plaintiff tended to show that on July 1, 1889, the plaintiff, about 65 years of age, was a passenger, with her sister, on a train of the defendant company, going to Queen's Lane station, Germantown; that when the train reached that station it stopped, and the plaintiff and her sister attempted to alight, but while they were descending the steps the car suddenly started again, throwing the plaintiff off her feet and against the car, and that she thus received bruises about her spine which produced permanent injuries.

There was testimony for the defendant tending to rebut en-

Statement of Facts.

tirely the plaintiff's allegation that she was injured while alighting from the train, and further testimony as follows:

Edward Hopkinson testified that he was a passenger upon the same train with the plaintiff, and was sitting near the door in an adjoining car; that the attention of the witness was attracted to the two ladies, when they started to leave the car they were in; that he observed indications that the train was about to move, and ran out to the platform of the car, calling to them " Hold up," several times, in a loud voice, but they paid no attention to him, and the plaintiff stepped off the car after the train had begun to move; that the witness hurried to her, caught hold of her just as she stepped off, and held her away from the car until the train was stopped. William A. Craig, a passenger who got upon the train at Queen's Lane station, testified for the defendant in part as follows:

" A. When I came down the steps from the station the cars had just come forward, and two gentlemen got on before me. I saw these two ladies coming down the steps of the car; I saw there would be an accident, and I called out, " For God's sake don't get off, the train will stop again." This lady was down on the lower step, and insisted on getting off. I got on the steps and pulled this other lady back on the steps, and then caught hold of this old lady's hand that had hold of the railing of the car, and detached it from the car. Then Mr. Hopkinson and I had the lady standing still on the platform, and that was all. Q. How fast was the train moving when this first lady got off? A. I might say it had just commenced to move. . . . . .

By the court: " Q. Which platform were you on? A. The platform of the smoking car, the combined car. Q. You were going up that platform, and they were going down on the car in front? A. Yes. Q. The bumpers were together? A. Close together. . . . . Q. Do I understand you to say that you called to the ladies? A. I did; I called to them, ' For God's sake don't get off,' in as loud a voice as I could, and told them they would stop the train. Q. What did you say to the ladies? A. I says, ' For God's sake don't get off, this train is moving.' Q. How near were you to them? A. I was just going up the steps, and she was coming down; and there was just the difference between the two cars."

Charge of Court below.

By Mr. Hayes: "Q. And the train did afterwards stop the second time? A. Yes, sir, right away. . . . . Q. You were just getting on when she was getting off? A. I was going up the steps, when I saw the ladies going down. The car was kind of moving when I got on? Q. It had just commenced to move? A. It was just in the act of moving away when I got on."

The plaintiff and her sister both denied that there was any one but themselves about the platform of the car at the time of the accident.

The testimony being closed, the court, WADDELL, P. J., after submitting to the jury the questions whether the plaintiff received any injury while alighting from the train, as she alleged, and whether, if so, the injury occurred in consequence of negligence of the defendant, charged them further in part as follows:

Now, was she in the act of leaving the car when it started, just as it was starting, or had the train started before she attempted to leave it? If the train started just as she was in the act of stepping off, and she had no warning and no reason to believe that the train would then start, we say to you that in our judgment she did not contribute to the accident. But if the train had started before she attempted to step off, you will thus see that she had knowledge of its moving, and it was her duty to stand fast until the train stopped again, so that she might get off. But if she did step off of that car just as it was in the act of moving, just as it was starting, was she warned or had she been warned not to do so? If she had, if she was warned not to do so, then it was just as much her duty to stop and stand fast, as it was not to step off if it had been in motion.

She tells you that there was nothing of the kind took place; that there was nobody about there; there was no gentleman there, no conductor, no brakeman, nobody to warn her, and there was nobody to assist her in getting off. Her sister corroborates her in this. But Mr. Hopkinson tells you that he was riding in the car immediately succeeding the car which these ladies occupied; he sat on the front seat of the car within three feet of the door; that the door of the car was open and he was looking out; that he saw these ladies start out of the

Charge of Court below.

car they were in, saw them in the aisle in the act of leaving it; that he saw them come on to the bumper out of the door; that he further saw from some indications of the conductor that the train was about starting, or he knew from the whistle that the train was about to start, and, anticipating that they might get into trouble, he jumped up and ran out on the platform of his car and told them not to leave the train; that they went on; that he went down the steps of his car, and as the old lady was in the act of stepping off he seized her. [If he warned her not to get off that car, she ought to have heeded his warning. She was negligent if she disregarded it.] [1]

Mr. Craig tells you that he was just in the act of stepping on the car as this old lady was in the act of stepping off; he was a passenger that got on at that station, and just as he was in the act of stepping on the car, he felt the car moving, and he warned these ladies and said to them, " For God's sake do not attempt to get off here; " and he used some violence, as I understand, towards the second lady, threw her back, and Mr. Hopkinson had hold of the old lady and he turned around and gave her his attention, loosened her hand from the car and stopped on the platform of the station with her, and there they stood as the train went by. [Did he warn her not to get off? If he did, then it was her duty to have heeded his warning.] [2] Did she hear them? She was close enough to hear them; for you see they were on one bumper and he was on the other. It is the duty of the passenger, always, to have his reason about him; he must know what he is doing as he passes off a train or enters it. Did this old lady hear these people? Is it reasonable to suppose that she could have gone without hearing them? This train was about moving as she stepped off, as they say. [Now, I say, if she was warned by these people, it was her duty to obey that warning; and if she disregarded it, she was negligent in thus disregarding it; and if she contributed in any way to the injury, if an injury did result to her there, then she cannot recover in this action.] [3]

I am requested by the defendant to instruct you upon what they understand to be the legal principles involved.

2. If the jury believe from the evidence that the plaintiff undertook to get off the train after it began to move, she is guilty of contributory negligence and cannot recover.

Arguments.

Answer: From what I have already said in my general charge, you will see that I am called upon to affirm that point.

3. If the jury believe that the plaintiff attempted to get off while the train was in motion, in disregard of the warning not to do so, she was guilty of negligence and cannot recover.

Answer: You will see again, from what I have already said, that I must affirm that point.

7. Under all the evidence in the case the verdict must be for the defendant.

Answer: As I have already said to you, I cannot take the case away from you. I must leave the evidence as it exists in your hands, and you must determine whether the plaintiff is entitled to recover or not, and I must therefore disaffirm that point.

—The jury returned a verdict for the defendant. A rule for a new trial having been discharged and judgment entered, the plaintiff took this appeal assigning for error:

1-3. The parts of the charge embraced in [ ] [1 to 3]

*Mr. William M. Hayes*, for the appellant:

It is respectfully submitted that because a passenger warns a fellow passenger to do or not to do a particular thing, the doing of it, or the failure to do it, does not constitute negligence per se. It may be proper to submit to the jury what a fellow passenger says, as a fact tending to prove negligence; but the court instructed the jury that the failure of these two women to obey Hopkinson and Craig was legal negligence, and treated the question, whether the plaintiff was negligent, as one to be determined, not by the jury but by Hopkinson and Craig. On what principle is their judgment that it was not proper to get off, set above the judgment of the two women that it was proper? It was for the jury to judge the facts, and say whether, in view of all the circumstances, the plaintiff committed an act of negligence in attempting to alight from the train when she did: Johnson v. Railroad Co., 70 Pa. 365; Penna. R. Co. v. Kilgore, 32 Pa. 292; Delaware etc. Canal Co. v. Webster, 18 W. N. 341; Penna. R. Co. v. Peters, 116 Pa. 206; Penna. R. Co. v. Lyons, 129 Pa. 113; Wharton on Negl., §§ 375, 378; 2 Redf. on Railways, 241, 98.

*Mr. John J. Pinkerton*, for the appellee :

The judge must certainly say what conduct, upon the part of either the railroad company or the passenger, constitutes negligence. Having done so, he submits the facts to the jury, that they may determine whether, in the particular case, negligence is to be imputed to either party: Penna. R. Co. v. Lyons, 129 Pa. 113; McClintock v. Railroad Co., 21 W. N. 133; Penna. R. Co. v. Peters, 116 Pa. 210; New York etc. R. Co. v. Enches, 127 Pa. 324; Phila. etc. R. Co. v. Heil, 5 W. N. 93. It being the function of the trial judge to explain to the jury what acts, if proved, will constitute negligence, the instructions complained of in this case were not error. It was entirely proper to charge that if the plaintiff attempted to get off a moving train, in the face of a warning not to do so, she was guilty of negligence: New York etc. R. Co. v. Enches, 127 Pa. 316; Penna. R. Co. v. Aspell, 23 Pa. 147; McClintock v. Railroad Co., 21 W. N. 135.

OPINION, MR. JUSTICE WILLIAMS :

Three questions were submitted to the jury on the trial in the court below. These were, whether the plaintiff received any injury whatever in alighting from defendant's cars at Queen's Lane; whether the defendant was guilty of negligence in the management of the train on which the plaintiff was a passenger; and whether the plaintiff was guilty of contributory negligence in attempting to leave the train as she did.

No complaint is made of the manner in which the first and second of these questions were submitted, but the errors assigned relate to the instructions given to the jury in regard to the third. The plaintiff sought to recover on the allegation that, as she was stepping down to the platform at the station, the train suddenly moved, threw her from her feet and against the car, so that she was badly bruised and permanently injured. The defence was that she was not thrown from her feet or against the car or injured in any manner, but that if injured it was due to her own negligence in attempting to leave a train in motion after being warned not to do so. Two gentlemen who were passengers on the same train saw her descending the steps, and went to and warned her not to attempt to leave the

car until it had stopped. She disregarded the warning, left the train while it was moving, and alleges that she was thrown violently against the car and the railing at the end of the platform in front of the car. If the jury believed that she was hurt, it was therefore important to inquire whether her injury was due to her own want of care.

The defendant's counsel presented a point in which they asked the court to charge: "If the jury believe that the plaintiff attempted to get off while the train was in motion, in disregard of the warning not to do so, she was guilty of negligence and cannot recover." This point was affirmed, and the same principle was stated in the general charge. The plaintiff admits that if the notice had come from the conductor or other trainman it would have been negligence to disregard it, but insists that as it came from fellow passengers it stands on wholly different ground. The position is thus stated by the appellant: "Because a passenger warns a fellow passenger to do or not to do a particular thing, the doing of it or the failure to do it does not constitute negligence per se. It may be proper to submit to a jury what a fellow passenger says, as a fact tending to prove negligence; but we submit it is not negligence as matter of law to disobey a fellow passenger." This is specious, but it is hardly fair to the learned judge. He did not lay down any general rule requiring one passenger to obey the directions of another, or to heed the warnings of another. What he did say was, "If the jury believe that the plaintiff attempted to get off while the train was in motion, in disregard of the warning not to do so, she was guilty of negligence." She might not have noticed that the train was moving, or, if noticing it, she may not have understood that it would stop for her to get off. Those who were near her and saw her danger, therefore, went out on the platform and told her to wait till the train should stop, one of them saying, "For God's sake, don't attempt to get off here; the train is in motion." It did not matter who pointed out her danger to her. It was enough if her attention was drawn to it. It then became her duty, not to obey any particular person or direction, but to avoid the danger to which her attention was called, and not to do so was negligence. If she had been approaching a grade crossing, and Mr. Craig had been standing near, and, seeing a train

Opinion of the Court.

approaching, had called out to her, as he did when she was about to alight at Queen's Lane, "For God's sake, don't attempt" to cross, for there is a train coming, and she had gone forward notwithstanding, and been hurt, there could be no doubt of her negligence. She is not bound to obey the warning, but she disregards it at her peril. It gives her notice of her danger, and if she nevertheless exposes herself to it, she has no one but herself to blame if she is injured by it. Such was her situation on the day of the alleged injury. She was about to expose herself to a danger which it was apparent she did not realize. Those near her warned her earnestly not to do so. She disregarded their warning, took the risk they urged her not to take, and, as she says, was seriously hurt. Why? Because she took the risk of exposing herself unnecessarily to a danger to which her attention was distinctly called.

The appellant complains that the learned judge said to the jury: "Did he (Craig) warn her not to get off? If he did, then it was her duty to have heeded his warning;" and her counsel ask: "Why is this unlimited power placed in Hopkinson and Craig?" The reply is that there is no power whatever placed in them. She was under no legal obligation to obey them. The duty of which the learned judge speaks is not one which she owed to them, but to herself. She owed it to herself to avoid a known danger; and when she was warned by those about her not to leave the train until it stopped, the danger was pointed out, if it had been unknown before. If then she chose to take the chances of escaping safely, she must not complain if the chance turns against her. The assignments of error are not sustained, and

The judgment of the court below is affirmed.