FT. WORTH & D. C. RY. CO. v. TAYLOR.

(Court of Civil Appeals of Texas. Amarillo. Jan. 25, 1913.)

1. CARRIERS (§ 303*)—PASSENGERS—STOPPING TRAIN.

The time which a passenger train must stop to permit passengers to alight varies with each particular case; a longer time being required where there are many passengers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1216, 1218, 1226–1232, 1234–1240, 1243; Dec. Dig. § 303.*]

2. EVIDENCE (§ 147*)—NEGATIVE EVIDENCE.

Where a witness who testifies that he did not see or hear a particular incident is in such circumstances that his failure to hear may be inconsistent with the happening of the event, his negative testimony is admissible as against affirmative statements as to seeing or hearing the event.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 435–437; Dec. Dig. § 147.*]

3. CARRIERS (§ 320*)—PASSENGERS—INJURIES —JURY QUESTION.

Evidence, in an action for injuries to a female passenger by suddenly starting the train while she was about to alight, held to make it a jury question whether the train employés called out the station name.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. § 320.*]

4. CARRIERS (§ 347*)—PASSENGERS—INJURIES IN ALIGHTING—CONTRIBUTORY NEGLIGENCE.

Unless it would be obviously dangerous for an ordinarily prudent person to alight from a moving train, it is generally a question for the

jury whether such conduct would amount to contributory negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. § 347.*]

5. CARRIERS (§ 347*)—PASSENGERS—INJURIES IN ALIGHTING—CONTRIBUTORY NEGLIGENCE.

Whether a railroad passenger was guilty of contributory negligence in alighting while the train was moving *held* a jury question.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. § 347.*]

6. CARRIERS (§ 348*)—PASSENGERS—INJURIES IN ALIGHTING—INSTRUCTIONS.

In an action for injuries to a passenger in alighting after the train started, defendant requested a charge that if the passenger stepped off the train while moving, and was warned not to do so, and she heard and understood the warning, or by ordinary care could have done so, and did not heed the warning, if any, and was guilty of contributory negligence in not doing so, and was negligent in getting off after being warned, and such negligence, if any, contributed proximately to her injuries, if any, the jury should find for defendant. *Held*, that the instruction was proper, except as to ordinary care in discovering the warning, which was immaterial, and was erroneously refused; the general charge on contributory negligence not covering the point presented.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1403–1405; Dec. Dig. § 348.*]

7. CARRIERS (§ 347*)—PASSENGERS—INJURIES—SUFFICIENCY OF EVIDENCE.

Evidence in an action for injuries to a passenger by stepping off of a moving train *held* to make it a jury question whether she was warned not to get off the moving train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. § 347.*]

8. CARRIERS (§ 347*)—PASSENGERS—INJURIES—ISSUES.

The question whether failure to heed a warning given by a passenger's brother to her not to get off the train after it had started to move was contributory negligence should have been submitted as an independent issue to the jury, in an action for resulting injuries.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. § 347.*]

9. CARRIERS (§ 347*)—PASSENGERS—INJURIES—JURY QUESTION.

In a railroad passenger's action for injuries in getting off a train after it had started, whether the passenger was negligent in getting off after having been warned not to do so by her brother *held* a jury question.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. § 347.*]

Appeal from District Court, Armstrong County; A. S. Rollins, Special Judge.

Action by R. M. Taylor against the Ft. Worth & Denver City Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Turner & Wharton, of Amarillo, and Spoonts, Thompson & Barwise, of Ft. Worth, for appellant. J. A. Stanford and H. H. Cooper, both of Amarillo, for appellee.

HENDRICKS, J. Appellee, plaintiff in the lower court, sued the appellant railway company, alleging that his wife was a passenger on one of its trains, and that in approaching the station of Claude, her destination, the employés of the train failed to announce the means of exit for the purpose of disembarking from said train at said station, and to have a sufficient number of doors conveniently open near the place in the coach in which she was riding to enable her to alight at said station, and further failed to stop the train at said station a sufficient length of time to enable her to alight therefrom, and that while traversing from one car to another, attempting to find a place to alight from the train, and while "on or near the steps of said train," the defendant, "without any notice or warning, suddenly and unexpectedly caused the speed of the train to be greatly increased," thereby causing her to fall to the ground and producing the injuries sued for.

Appellant, under several propositions, asserts that the trial court should have instructed a verdict for defendant, in that the evidence is insufficient to sustain appellee's allegations of negligence; and, again, that his wife was conclusively guilty of contributory negligence in alighting from a moving train. In this train there were three day passenger coaches between the baggage car and the sleepers, including the smoking car, the latter immediately behind the baggage car, and the two other day coaches, appropriate for lady passengers, were situated immediately behind the smoker; and Mrs. Taylor, appellee's wife, was sitting with her brother, her companion, and also a passenger on this occasion, near the rear of the last day coach next to the front sleeper. The day coaches were vestibuled, and, upon arrival at the station, the means of exit afforded passengers was the opening of one of the vestibule doors at the steps of the front day coach, immediately behind the smoker, and the other at the door in front of the smoker and next to the baggage car.

[1] First. With reference to the proposition of what is "a sufficient length of time" for stopping the train at Claude for the purpose of allowing passengers to disembark is necessarily dependent upon conditions. As was said by the Supreme Court of Minnesota in the case of Keller v. Railway Co., 27 Minn. 178, 6 N. W. 486, in passing upon a charge, directing the jury that carriers "are required to allow a reasonable time in which to allow such person (meaning the plaintiff) to safely reach the platform or landing place," said that "the exact length of time to be given must depend largely upon circumstances," "for instance, a longer time would be required when there are many passengers to alight than when there are few"; and as Judge Thompson said, in his Com-

mentaries on Negligence, vol. 3, § 3017, p. 476: "Upon the question of what is a reasonable length of time to stop at a station in order to discharge passengers, regard must be had obviously to the situation of the passengers." The evidence shows that Mrs. Taylor had to walk from 130 to 140 feet in order to disembark; that the Cattlemen's Convention was on, and that there were two sections of this train—the other section behind and this one in front—and that this particular train, after it had stopped at the station at Claude, started and had to stop the second time to allow other passengers to get off who had failed to alight from the train at the time of the first stop. The opening between the smoker and the front day coach was practically the means of exit for passengers riding in the two day coaches, and ladies would scarcely be expected to go through the smoker to the baggage car exit, nor do passengers generally go through the smoker from other coaches to the baggage car for that purpose. Notwithstanding the misdirection of other passengers to Mrs. Taylor, as to the means of exit, for the purpose of alighting from said train, the evidence, as a whole, was amply sufficient to submit this particular issue.

Second. On the issue of announcing to the passengers the way out and the situation of the means of exit, the appellant assigns two reasons why this issue should not have been submitted to the jury—because there was no duty upon the railroad company to make such announcement to the passengers, and, if there were, the brakeman complied with this duty, made said announcement, and that his affirmative testimony to that effect should be conclusive evidence that he did so, when you eliminate the negative testimony, which appellant says has no probative force in opposition to it. The question of duty in this matter must necessarily arise or not, according to circumstances. If every door had been opened, except the rear door, and every coach spotted at the platform, and a brakeman at each opening to receive passengers, manifestly an announcement generally to the passengers would be absurd; on the other hand, an absurd reduction of the proposition conversely would be to open no doors of the two passenger coaches and only the one door between the smoker and the baggage car, and expect men, women, and children to trail their way through all the coaches, including the smoker, without a reasonable announcement to the passengers generally as to the means of exit. The brakeman testified that it was his duty to notify passengers where there were vestibuled doors, and where the passengers had to travel 140 feet to find an opening. We do not think that the cases cited by appellant have any analogous application to the facts of this case.

[2, 3] And upon this question, because affirmative testimony of a relevant fact is delivered, it is not true that negative testimony, simply because it is negative, is to be disallowed to contradict it. Again, it depends upon the situation of the parties and the circumstances connected with such situation, whether the negative testimony is to have any probative force. Where the person who makes the statement that he did not hear or see the particular incident inquired about is so placed, and the circumstances surrounding him at the time as to his ability to hear and see are such as that his failure to hear or see the incident may be inconsistent with the happening of the event, such person's negative testimony in opposition to affirmative statements is admissible. 3 Chamberlain on Evidence, § 1758. The conductor of this train testified that he was in the sleeper when they approached the station of Claude, and that he met the brakeman about midway of the rear day coach, in which the appellee's wife was situated, and heard him call "Claude," and, if he said anything else, he did not hear or notice it. The conductor said he also announced the station upon this occasion, and there is no testimony by the appellant that any other person gave any notice to passengers at this time. It is inferable from the testimony that it was at this time the conductor heard the other announcement of the brakeman, calling "Claude," for there is no testimony that this brakeman, or any other employé, made any other announcement at any other time. The brakeman, Lyons, testified that he announced the way out, that they (meaning the passengers) would have to go through that particular coach to the front end of the next day coach to get out, and Mrs. Taylor and her brother testified they did not hear it, if announced, although Lyons, the brakeman, stated he went to the rear of the coach, where they must have been sitting. However, it is not clear at just what place in the coach he made his announcement. If it were not a reasonable announcement, so that the passengers generally in that coach could hear it, as to those passengers who could not hear it, it was tantamount to no announcement. The facts of the cases cited by appellant are manifestly different from this case and the negative testimony in those cases, held to be of no probative force, in opposition to affirmative testimony, is clearly of such a character as not to be inconsistent in·the slightest with the happening of the incident which the affirmative testimony declared to have existed. The negative testimony disclosed in this record was sufficient to make the occurrence testified about a disputed fact for the jury to decide.

[4] Third. In some states it is held to be contributory negligence per se to alight from or jump on a moving train, in others, such acts are construed to be presumptively negligent, and contributory negligence on the plaintiff's part is to be negatived and dis-

proved by him, but in this state, unless to an ordinarily prudent man it would be obviously dangerous, under the conditions, to alight from a moving train, it is generally held to be a question of fact for the jury; in other words, unless from the very nature of the act, or from the conditions surrounding the commission of it, if ordinary minds would differ from the inference of negligence in the consideration of such act, the negligence is one of fact to be pleaded and proved by the defendant. "As the danger in alighting from a moving train is great or small, according to the rate of speed with which the train is running, it is the most important factor to consider along with the physical condition and age of the passenger, in determining whether or not the act of alighting from a train in motion will constitute negligence." 2 White on Personal Injuries, p. 1090.

[5] The conductor testified that this train stopped the second time within 30 feet of the place where it had previously stopped at the station the first time, and it was during this second movement of the train that Mrs. Taylor alighted therefrom. If the jury believed and resolved this testimony against the defendant, and we are to consider it in that light, it must have been moving very slowly when she alighted. Her acts of negligence are not shown to that extent of conclusiveness that ordinary minds in the consideration of them might not differ as to the only inference to be drawn from them. This assignment will be overruled.

[6] Fourth. Appellant assigns error on account of the refusal of the trial court to give the following specially requested charge: "Gentlemen of the jury, you are charged that if you believe and find from the evidence in this case that plaintiff's wife stepped off or got off said train in question while said train was moving, and you further find from the evidence that plaintiff's wife was warned not to get off said train while it was moving, and if you find from the evidence that plaintiff's wife heard and understood, or in the exercise of ordinary care could have done so, and if you find and believe from the evidence that plaintiff's wife did not heed said warning, if any, and if you find that she was guilty of negligence (as that term is defined in the court's main charge) in not heeding said warning, if any, and if you find from the evidence that she was guilty of negligence, if any, in getting off said train after receiving such warning, if any, and that such negligence, if any, in getting off said train, after receiving such warning, if any, that such negligence, if any, contributed proximately to such injuries, if any, sustained by plaintiff's wife, then you will find for the defendant, although you believe the defendant guilty of the negligence charged by plaintiff." With the exception of the tautology, and that part of the charge

wherein the exercise of ordinary care in the discovery of the warning is made an element of the same, which latter is very probably an immaterial one and of no consequence, we can find no criticism of the instruction as to the presentation of the issue requested. The appellant, in his special answer, had pleaded the contributory negligence of appellee's wife, to the effect that as she was about to alight from the train, and while the same was in motion, she was warned not to alight, and such warning was sufficient to put her on notice of the dangers attendant upon such action, and, heedless of her own safety, she negligently and carelessly left said train while the same was in motion, which was the proximate cause of her injuries. The following is the testimony of the witness Badgely, the brother of Mrs. Taylor, relevant and material to this issue: "When we were getting off the last time after making the last trip through the car, I think I told her to wait a minute or stop a minute. She was ahead of me, and I was behind. Whether she heard me or not I don't know. The train was running. I think she said one time she did not want to be carried by from the children, but I don't know whether it was just at that time. It might have been. I don't know that I told her the train was going to stop. No, not after it started up. I don't remember that I told her it was going to stop. I might have. Yes, sir; about the 29th of June, 1910, I made a statement to the company in regard to this accident. I don't think there was anybody between Mrs. Taylor and myself when we started to get off. I think she was 5 or 6, maybe 8, feet ahead of me when she started to get off. I was entering the vestibule when she went down. Just about as I entered, Mrs. Taylor stepped off. As well as I remember, I think I said to Mrs. Taylor, 'Wait a minute.' I think that is what I said, anyway something to that effect. That looks like my signature to this statement. It don't seem to me like I said in that statement that: 'Mrs. Taylor was just ahead of me, and I told her not to get off, but to wait until the train stopped, as it was then moving.' I don't think I said that much, possibly I did. I said something to her. I signed that statement and I think it is correct. I guess it must have been. I might have said in that statement, 'I don't know how fast the train was moving, but about as fast as a buggy in a fast trot, maybe 8 or 10 miles an hour.' She said something about not wanting to be carried by her children. I was just behind her when she got off the train. This statement may be correct. 'I told her not to get off, but to wait until the train stopped, and she said she could not afford to be carried by.' I got off the train immediately after my sister fell, and went back to where she was, and I asked if she thought she was hurt much, and she said she didn't think she was hurt bad.

When I told her not to get off the train, the train was running, and I was behind her. She might have heard me and might not have. I don't know whether she heard me positively or not. There was nothing more than the noise of the train to keep her from hearing me."

In the case of M., K. & T. Railway Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058, our Supreme Court held in a personal injury case, where the intoxication of the appellee was pleaded as a special defense of contributory negligence, and requested by appellant, the railway company, to be submitted to the jury, in an appropriately framed charge, which was refused, that, where the defendant had specially pleaded and specially requested a specific issue and the general charge of the court was not sufficient to specifically cover the particular point, it was error upon the part of the trial court to deny the presentation of the issue. The theory advanced by the defendant in that case was that if the intoxication placed appellee in such a condition as that he was unable to exercise the care he should under the circumstances, and on account thereof received his injuries, he should not recover; and in upholding this special charge, based upon the special plea, our Supreme Court, reiterating the principle often announced before and successively followed since, said: "That the defendant had the right to prepare and demand the giving of a charge, requiring the jury to find whether the evidence established the existence of any specified group of facts, which, if true, would in law establish such plea;" and, "any other rule would deprive litigants of their rights to have the court explain to the jury the principles of law applicable to the very facts constituting a cause of action or defense, so that they may intelligently pass upon the various complicated issues frequently presented for their determination in one case under our practice"—citing Railway Co. v. Schieder, 88 Tex. 166, 30 S. W. 902, 28 L. R. A. 538. The same principle is again announced, and the doctrine again enforced, in the case of Railway Co. v. Hall, 98 Tex. 480, 488, 490, 85 S. W. 786, and also in the case of M., K. & T. Railway Co. of Texas v. Wall, 102 Tex. 362, 116 S. W. 1140, decided by the Supreme Court of this state. The Wall Case decides the proposition that "if the place where deceased was walking when killed, along and close to a railroad track, was unsafe, and within a convenient distance there was a safe place where he might have walked, and he voluntarily chose to continue in the dangerous place, his act constituted negligence, barring recovery by his relatives"—a single fact pleaded by the railway company in that case and especially requested by the defendant of the trial court to be submitted to the jury, and refused by said court and with only a general charge of contributory negligence, which was held to be erroneous in denying to the defendant the presentation of such independent and substantive issue. The answer to this assignment by appellee is as follows: "There is no evidence that the supposed warning was given by Badgely to Mrs. Taylor, but, if it was, it could not affect her rights unless she heard it, and the evidence is positive and uncontradicted that she did not hear it, if it was given. But if said supposed warning had been given, and had been heard by Mrs. Taylor, at most it could only be considered by the jury in determining whether or not she was guilty of contributory negligence, not in failing to heed said supposed warning, but in getting off the moving train. This charge is not a grouping of all the facts bearing upon the question of contributory negligence, but is a singling out of one supposed fact, without any evidence to support it, and seeks to have that submitted as an independent issue, which of itself is to determine plaintiff's right to recover."

[7, 8] There is ample evidence sufficient to raise the issue in this case that Mrs. Taylor heard the warning, if the same were given to her, for it may be logically inferred that, if uttered upon the part of her brother, she replied to the same in substance that she did not want to be carried by the station on account of her children; and in this case the testimony is susceptible of an inference that he warned her not to get off the train, and informed her that the train would stop. This latter part of the statement as to the stopping of the train we are inclined to think was a part of the warning, which, if true, clearly presented to the woman's mind that there was a safer course upon her part to pursue than that of alighting from the train. The evidence further shows in this record that the brakeman had pulled the bell cord and the signal had been given just at this time for the train to stop, and the train did stop within a short distance of the spot where she alighted from the steps. In the McGlamory Case, supra, the special charges grouped one fact—the intoxication of the appellee—which the Supreme Court held was sufficient, disconnected from other matters, to permit it to be submitted as an independent issue, and the analogy is only illustrative of the one proposition—that one fact may be the contributive proximate cause of an injury, according to the strength of it, if believed by the jury, which would necessarily be weak or potential under varying circumstances. A warning from a passenger who was unused to traveling to another passenger, who was an ex-railroad man, with considerable experience and habituated to jumping trains fifteen miles an hour, would be very weak in its evidentiary significance if the train were only going three or four miles an hour, and so weak as that a court should not single it out as a substantive fact and submit it as a substantive defense; on the other hand, in noting the decisions of some

of the different states, we find that, where warnings come from employés to passengers and disobeyed, the disobedience of them is very often a superinducing fact in holding the injury as a result of extreme carelessness and negligence per se. We believe, however, the Supreme Court of Georgia in the case of Railway Co. v. McKinney, 118 Ga. 535, 45 S. E. 430, stated the true rule, as follows: "Further complaint is made that the court charged the jury in substance that, if the plaintiff disembarked from the train over the protest of the conductor, it would be for them to say under all the circumstances, if the conduct of the plaintiff was such as to prevent a recovery. It is contended that there could be no recovery if the plaintiff voluntarily jumped from the train over the protest of the conductor. The test is not whether the conductor protested or failed to protest, but whether the plaintiff's act was so negligent as to prevent a recovery. The fact that the conductor protested might be ground for assuming that the plaintiff's act was imprudent and dangerous, but the protest alone would certainly not prevent a recovery." The matter of warning is one to our minds whether significant enough as an independent fact, if believed to have been given and heard and not heeded, that the person so violating it is reckless of her own welfare to that extent as to jump; that is, whether an ordinarily prudent person, notwithstanding the desire not to be carried by, and to see the children, under the circumstances, would obey the warning and not jump, or stay on the train, and as in this case, if the jury believed the testimony, wait until it did stop for the purpose of alighting; and we believe that a warning of this character, coming from brother to sister, under the circumstances of this case, should have been submitted to the jury as an independent, substantive issue, for the benefit of the defendant. The warning might not have been quite as significant as in the case of Brown v. Barnes, 151 Pa. 562, 25 Atl. 144, where it is held: "That Brown must have seen that the train, when he reached the steps, was going fast enough to throw down the two men who alighted immediately before him. In the face of that patent fact, it is useless to discuss the speed of the train or how far it had got from the starting point. The danger was manifest, and the negligence of venturing into it beyond question." In the case of Kilpatrick v. Pennsylvania Railway Co., 140 Pa. 502, 21 Atl. 408, the Supreme Court of Pennsylvania discussed a case where a passenger warned another, a woman, in this language: "For God's sake, do not attempt to get off here, the train is in motion." And in another part of the opinion it is said that two passengers warned her not to get off until the car stopped. While a little stronger in language, the anal-ogy between the two is almost identical. In that case the railway company defended upon the ground that she attempted to leave a train in motion, after having been warned not to do so, and that court said: "She is not bound to obey the warning but she disregards it at her peril. It gives her notice of her danger, and, if she nevertheless expose herself to it, she has no one but herself to blame if she is injured by it." And further says: "She was about to expose herself to danger, which it is apparent she did not realize. Those near her warned her earnestly not to do so."

[9] That court held under the circumstances of that warning and the alighting from that train, the violation of it, was negligence per se. From a consideration of the brother's testimony we think, and so decide, that the appellant, after pleading an issue of this character, and requesting the special instruction based upon it, it was clearly entitled to have the issue substantively and independently submitted to the jury as a contributive proximate cause of the injury. If she were heedless in jumping into a place of danger, whether she realized it fully or not, the act itself of jumping from a moving train, while not negligence per se in this state, is necessarily in almost any case attended with some danger; and, the warning in this instance assumed for the purposes of this opinion to have been given and violated, it was for the jury to say whether she was heedless in jumping into a place of danger, for the test is, Would an ordinarily prudent person have done so under the same or similar circumstances? The general charge in this case on contributory negligence is not sufficient to cover this issue, and we reverse and remand this cause for a new trial, overruling all other assignments raised by the appellant, and it is so ordered.

Reversed and remanded.