FT. WORTH & D. C. RY. CO. v. WININGER.

(Court of Civil Appeals of Texas. Amarillo.
June 28, 1913. Rehearing Denied
Oct. 11, 1913.)

1. RAILROADS (§ 350*)—INJURIES TO PERSONS ON TRACKS—CONTRIBUTORY NEGLIGENCE—CUSTOMARY USE OF TRACK.

It is not contributory negligence, as a matter of law, to cross railroad tracks at a place not a crossing, though there be other ways of crossing which are both safe and convenient, where people are accustomed to cross the tracks where there are no crossings with the knowledge and consent of the company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

2. TRIAL (§ 253*)—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE—IGNORING ISSUES.

In an action against a railroad company for injuries received while crossing its track at a place not a crossing, where the issue of contributory negligence was clearly raised by the pleadings and evidence, it was reversible error to refuse defendant's request for an affirmative charge upon that issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

3. TRIAL (§ 242*)—INJURIES TO PERSONS—INSTRUCTIONS—FORM—"CURED."

An instruction allowing compensation for nursing and attention to plaintiff's child until "cured" of injuries received in crossing defendant's railroad at a place not a crossing is not erroneous, because, her limb having been amputated, defendant claims she would never be "cured," as "cured" means the act of healing, to heal a wounded limb, and the jury could not have construed it as contended.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 569–576; Dec. Dig. § 242.*

For other definitions, see Words and Phrases, vol. 2, p. 1786.]

4. TRIAL (§ 252*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

In an action for injuries received in crossing a railroad track at a place not a crossing, an instruction allowing reasonable compensation for necessary artificial limbs already purchased or that might be required was reversible error, where there was no evidence that the

amount paid for artificial limbs already purchased was reasonable.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

5. TRIAL (§ 252*)—INSTRUCTIONS—CONFORMITY TO EVIDENCE.

Where there was no evidence that the plaintiff, in an action for injuries received by his child while crossing a railroad at a place not a crossing, suffered any mental anguish, there was no error in refusing to instruct that the jury should not take into consideration any mental anguish suffered by plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

Appeal from District Court, Donley County; J. N. Browning, Judge.

Action by E. H. Wininger against the Ft. Worth & Denver City Railway Company. From a judgment for plaintiff, the defendant appeals. Reversed.

See, also, 151 S. W. 586.

H. B. White, of Clarendon, Turner & Wharton, of Amarillo, and Thompson & Barwise, of Ft. Worth, for appellant. D. W. Odell, of Ft. Worth, and A. T. Cole, of Clarendon, for appellee.

HALL, J. This suit for damages for personal injuries was instituted in the district court of Donley county by appellee against appellant railway company, alleging that the personal injuries were sustained by plaintiff's· daughter, Halys Wininger, April 25, 1909.

In his first amended original petition, appellee alleges that he lived in the northeast portion of the city of Clarendon; that appellant's line of road ran through the town from southeast to northwest, separating appellee's residence and other residences from the main portion of the town; that the main portion of the town was southwest from where appellee lived; that appellant's depot was located on the south side of appellant's track on what is known as Kearney street, and north of the business portion of the town; that Carhart street was two blocks east of Kearney street, and that from Carhart to Garnett streets, a distance of about three-fourths of a mile, there was no public crossing over appellant's track; that between Carhart and Garnett streets appellant had several switch tracks; that on the date of the accident in question and long prior thereto appellee, together with his daughter, Halys Wininger, and other people of Clarendon residing in the vicinity of appellee, had habitually used appellant's track and right of way between Carhart and Garnett streets as a place to cross on foot, and that they had been so using the same with the knowledge, consent, and acquiescence of appellant for many years prior to the date of the accident in question; that the fences along appellant's right of way between Carhart and Garnett streets had gaps in them and places where the public went through the same onto and across appellant's right of way going to the main part of Clarendon and returning from same.

Appellee further alleged that by crossing the appellant's right of way between Carhart and Garnett it was a more convenient way for going to school, town, etc., for appellee and others residing in that vicinity than going over other ways; that on the 25th of April, 1909, with his daughter, who was then about five years of age, appellee started to Sunday school near the business portion of the town on Kearney street in a southwesterly direction from appellee's home on the south side of appellant's track; that at the time appellee left his home that Garnett street was obstructed by a train of cars extending across it on appellant's main line, and by reason of such obstruction appellee and his said daughter started in a southwesterly direction along a path which led to and entered upon appellant's right of way; that they walked along appellant's right of way in a westerly direction until they came to an opening between a string of cars on which appellee alleged was track No. 2, and that, as appellee's daughter, Halys, was attempting to cross said track between said cars, appellant's servants and employés negligently, and without warning or signal of any kind, caused said cars to be moved, causing the said Halys to be run over, and causing her foot and leg below the knee to be mangled; that appellant's brakeman and conductor in charge of the train in·question knew that appellee's daughter, ·Halys, would probably attempt to cross said track at the time and place referred to, or could have ascertained the same by the exercise of ordinary care on their part by keeping a proper lookout, but that said conductor and brakeman failed to do so, and negligently gave the signal to the engineer to start said train in question, without keeping a lookout for appellee's daughter, and without giving any warning or signal to her of the intended movement of said cars, all of which appellee alleged was negligence on the part of appellant's brakeman and conductor; that said conductor and brakeman knew of the presence of appellee's daughter on appellant's track at the time in question, and knew that the public in general was accustomed to cross said tracks at said place, but notwithstanding that they or either of them caused said cars to be moved, without blowing the whistle on the engine, or without ringing the bell, or giving any other signal or warning of the movement of said cars, and without having a lookout at the rear end of the cars, all of which is alleged to be negligence and the direct and proximate cause of the injuries sustained by appellee's daughter; that the engineer and fireman on the train in question were in such position that they could not see the appellee

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

and his daughter, and by reason thereof appellant's employés were guilty of negligence in moving the train without ringing the bell or blowing the whistle; that by reason of the movement of the cars aforesaid appellee's daughter, Halys, had her leg caught by the wheel and crushed and mangled, making it necessary to have said limb amputated below the knee; that appellee paid $100 for surgical attention in having said limb amputated; that it was necessary to have the limb amputated the second time, which was at the reasonable value of $100, and that he also paid $50 for medicine and nursing; that appellee waited upon the said Halys for five days immediately after the injury in question, and that his time was reasonably worth $2 per day, and that appellee's wife waited upon said Halys 30 days exclusively, which appellee alleges is reasonably worth $30; that he had to purchase artificial limbs for his said daughter, and will have to continue to do so until she reaches the age of 21 years, and alleged that the original cost of such limbs was $75, which was a reasonable price therefor, and that it will cost appellee $25 a year to maintain such artificial limbs. Appellee further alleged that he was entitled to the services of said Halys from the date of her injury until she became 21 years of age, which services would have been of the reasonable value of $2,500, and that by reason of her maimed and crippled condition it has and will in the future require extra attention to care for her, which extra attention appellee alleged has been and will continue to be at the reasonable value of $10 per month until said child arrives at 21 years of age. The total damages were laid at the sum of $7,000.

By its second amended original answer appellant excepted generally and specially; denied generally the facts set up, and specially. pleaded that, if appellee's daughter sustained the injuries alleged, the same were caused by the negligence of appellee in permitting and inducing his daughter, Halys, to attempt to cross appellant's track at the time and place in question, and that appellee was guilty of negligence in inducing and permitting his daughter, Halys, to attempt to cross under appellant's cars at the time and place in question. All of which appellant alleged was negligence on the part of appellee, and was the direct and proximate cause of the injuries sustained; that the attempt of appellee and his daughter to cross under and between the string of cars in question was so sudden that the servants and employés of the appellant did not and could not in the exercise of ordinary care on their part know of the perilous condition of appellee's daughter, nor of her intention to cross between said cars or under said cars, in time to have stopped the train and avoided the accident. And the appellant further specially pleaded that by reason of all of the aforesaid facts the appellee, as well as his daughter, Halys, were guilty of contributory negligence in the manner and way they attempted to cross the track at the time and place in question; that when appellant's employés in charge of the train saw appellee and his child upon the right of way there was a safe and convenient place for them to have traveled between tracks Nos. 2 and 3 while going through appellant's yards; that during the time its employés saw said appellee and his daughter in the yards they were going in a westerly direction, parallel with the tracks, and towards a public crossing at the west end of the yards, and that said appellee did and had the right to rely on the presumption that appellee and his daughter would go to said public street before attempting to cross the track, and that the street was a safe and convenient place for them to have crossed said track; that by reason of appellee and his daughter not pursuing said course, but in attempting to cross the tracks at the place they did, each of them was guilty of contributory negligence. The answer further specially denied that its yards at the place of the accident were commonly used by the public as a crossing, etc. It is further alleged that appellee was guilty of negligence in permitting said child to go upon the tracks and through its yards, and in going and taking said child upon and through the yards; that at said time there were other and convenient ways which were not dangerous by which they could have gone from their home to Sunday school without having to cross the switchyards and tracks, and that if they had taken such other ways they could have crossed at a public street crossing, and in failing to take such ways they were guilty of contributory negligence; that immediately prior to the time of the accident appellee had his daughter by the hand, and just prior thereto he negligently let go or permitted Halys to jerk her hand loose from appellee's and attempt to cross said track between the opening and the cars without having hold of her hand, which constituted contributory negligence.

[1] The first assignment of error is predicated on the refusal of the court to peremptorily instruct the jury to return a verdict for the defendant, because the evidence showed that plaintiff in going from his home to Sunday school could have gone another and different way or ways, and that such other way or ways were safe and convenient; it being urged under two propositions following this assignment that such exercise of discretion on the part of appellee constituted negligence as a matter of law. After reading the Byrd Case, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137, and other related authorities, cited in appellant's brief, it is difficult to conclude that this assignment is not well taken.

We, however, in prosecuting the investigation further, have found the case of Thompson & Ford Lumber Company v. Thomas, 147 S. W. 296, where writ of error was denied by the Supreme Court, in which Reese, Justice, uses this language: "The second assignment of error presents substantially the same question. Appellant's contention is not supported by the record as to conclusive effect of the testimony on this point. It is true that ordinarily the railway track was not a safe place to walk; but the evidence presents the issue that it was constantly used by persons employed in the mill just as appellee was using it with appellant's consent, and that this was known to those operating the engine and cars in question. While, in the exercise of due care, it was appellee's duty to use his senses of sight and hearing to discover the approach of the train, there is evidence to indicate that he did so, and that the accident was due to the failure of those operating the engine to give warning, by ringing the bell or blowing the whistle, of the approach of the cars. It is not the law that a licensee using the track as a passage way, because it is accompanied with some danger, by that fact alone, as a matter of law, is guilty of contributory negligence which would prevent a recovery in case he is injured. This would put a licensee on the same footing with a trespasser. By the third assignment of error appellant presents the proposition that it conclusively appears from the evidence that there was sufficient space besides defendant's road where plaintiff could have walked, and where his companion did walk at the time, and that if he had so walked he would have suffered no injury. By the fourth assignment of error the proposition is presented that the great weight and preponderance of the evidence showed that there was a convenient and accessible pathway along the entire length of defendant's track, and by the side thereof, where the plaintiff could have walked in safety, and that it was not necessary for him to walk between the rails, and that it conclusively appears that if he had used such pathway he would not have been injured. If it be the law that a person using the railway track as a pathway by permission of the railway company (that is, a licensee as to such use), who is injured while so doing, as appellee was, must be considered guilty of contributory negligence in such use of the track, if there is a way along the side of the track, or elsewhere, by which he can possibly travel, then appellant's contention must be sustained, and, for a like reason, in no conceivable case would such a licensee be entitled to recover. We can hardly imagine a case where it was impossible for such person to travel by the side of the track and out of danger, or to reach his destination by some other way than by using the track. We do not understand that any of the decisions of this state have one so far. The opinion in the case of Texas Midland R. R. Co. v. Byrd, 102 Tex. 263, 115 S. W. 1163 [20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137], must be considered in connection with its peculiar facts. The person injured was walking on a railroad bridge, 200 feet in length. To avoid being struck by an approaching train, he jumped from the bridge, and was injured. The case seems to have been ruled upon the proposition that the danger of using the bridge as a pathway was so obvious under any circumstances, and was known by the plaintiff to be so, that the plaintiff was guilty of contributory negligence in so using it when he was not compelled to do so. In the case of M., K. & T. Ry. Co. v. Wall, 102 Tex. 362, 116 S. W. 1140, it was distinctly held, as we understand the opinion, that it was a question for the jury as to whether a person of ordinary prudence would have walked upon or near the track upon which the train was approaching, when he could, by walking between the tracks, have been in a place of safety. The evidence disclosed that the space between the tracks was surfaced up and furnished a good roadway. The facts in the case of St. Louis & San Francisco R. R. Co. v. Mathis, 101 Tex. 342, 107 S. W. 530, were that an engineer in the employ of appellant, in going from the roundhouse of a railroad company to the station at night to catch an outgoing train, took a way usually and customarily traveled, which ran near a turntable pit. The night was dark and there were no lights to light up the ground at and in the vicinity of the pit. Plaintiff fell into the pit, and was injured, and the negligence was alleged to be the failure to have the grounds lighted. One of the defenses was assumed risk in voluntarily choosing an unsafe way. In answer to certified questions, the Supreme Court held that the evidence disclosed that there was another way by which plaintiff could have traveled, and that, under the facts shown, the trial court should have instructed a verdict for defendant, on the ground that plaintiff knew or must necessarily have known that the turntable pit and the yards in the immediate vicinity were unlighted and dark before he received his injuries, and therefore assumed the risk. We think that case is distinguishable from the present case. The only negligence charged to the defendant company, the failure to have the grounds lighted up, was known to the plaintiff. The danger arising from this negligence was known. In the present case the negligence charged is not the unsafe condition of the way, but the act of running upon appellee without the warning signals. The way was not unsafe but for this act of negligence, which appellee had no reason to anticipate. A few seconds' warning would have enabled appellee to put himself in a perfectly safe

place, and it was only the negligent failure to give the warning that gave rise to the danger. In this, also, the facts of this case distinguish it from the Byrd Case, supra, where the plaintiff had to jump from the bridge to save himself from the collision. In the Mathis Case the danger under the known conditions was known to the plaintiff."

[2] Appellant's second, third, and fourth assignments complain of the failure of the court to charge upon the defense of contributory negligence, and to give one of three charges requested by appellant upon that issue. The issue was clearly raised by the pleadings and the evidence, and the authorities are abundant holding that appellant was entitled to an affirmative charge upon the issue, and we think the court's failure to do so is reversible error. M., K. & T. Ry. Co. v. McGlamory, 89 Tex. 639, 35 S. W. 1058; M., K. & T. Ry. Co. v. Rogers, 91 Tex. 52, 40 S. W. 956; St. Louis & S. W. Ry. v. Hall, 98 Tex. 480, 85 S. W. 786; Tex. Trunk Ry. Co. v. Ayres, 83 Tex. 269, 18 S. W. 684; St. L. & S. W. R. Co. v. Kern, 100 S. W. 971; Ft. Worth & D. C. Ry. Co. v. McCrummen, 133 S. W. 899; G. H. & S. A. v. Worth, 107 S. W. 958; Ft. Worth & D. C. v. Taylor, 153 S. W. 355; G. H. & S. A. v. Washington, 94 Tex. 510, 63 S. W. 534.

[3] It is urged under the fifth assignment that the court erred in charging the jury in the thirteenth paragraph of the main charge on the measure of damages to allow the plaintiff all "just and reasonable compensation for necessary nursing and attention to the child until cured," and contends that the child, having had her limb amputated, will never be cured. This is a strained construction to place upon the word "cured." As used in this paragraph of the charge we must give it the first definition found in Webster's Dictionary, which is: "A healing; the act of healing; restoration to soundness from a wound; to heal a wounded limb"—and the jury could not reasonably have construed the charge otherwise.

[4] Appellant's sixth and seventh assignments of error attack the charge of the court with reference to the issue of surgeon's fees and the expense of artificial limbs. The evidence discloses that plaintiff had bought some artificial limbs prior to the date of the trial, for which he had paid $75 each, and had paid $100 to Dr. Hamm for amputating the child's limb. The court instructed the jury that they could allow appellee reasonable, just, and proper compensation for necessary artificial limbs already purchased and which he might be required to purchase in the future until she arrived at the age of 21 years. There is no evidence in the record that these amounts are reasonable and there is therefore no basis for the charge. Appellee having ex-

pressly refused during the oral argument of this case to enter a remittitur, this error is sufficient to require a reversal.

The eighth, ninth, and tenth assignments of error are without merit, and are overruled.

[5] The eleventh assignment of error is a complaint because the court refused a special instruction to the effect that the jury should not take into consideration any mental anguish that plaintiff may have suffered. There was no evidence upon which to base any such charge, and the court did not err in refusing it.

We think the court's charge upon the measure of damages was correct, and properly submitted every element raised by the pleadings and evidence, and the remaining assignments are therefore overruled.

Because of the errors pointed out, the judgment is reversed, and the cause remanded.